# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

THOMAS HAMANN,                                  :
Plaintiff,                                      :
                                                :               Docket No. 3:16-cv-00501-VAB
v.                                              :
                                                :
                                                :
STUART A. CARPENTER, et al.,                    :
Defendants.                                     :               **January 31, 2017**

## RULING ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND/CORRECT COMPLAINT

Plaintiff, Thomas Hamann, purchases and sells high-end motor vehicles in the State of Connecticut. Compl., ECF No. 1-1, ¶ 1.  Defendants are Stuart Carpenter, owner of Copley Motorcars Corporation in Boston, Massachusetts ("Mr. Carpenter"), and Leslie Wexner ("Mr. Wexner"), for whom Mr. Carpenter acted as an agent.  *Id.* at ¶ 3.  Mr. Hamann claims that Mr. Carpenter tortiously interfered with a contract expectancy, and that he did so while acting as Mr. Wexner's agent, making Mr. Wexner liable for Mr. Carpenter's actions under the doctrine of respondeat superior.  Defendants have moved to dismiss the Complaint on the grounds that this Court lacks jurisdiction over them.  *See* ECF No. 10.  Mr. Hamann has also moved to amend his complaint to add Mr. Carpenter's company, Copley Motorcars ("Copley"), as a Defendant.  *See* Mot. to Amend, ECF No. 28.  Defendants opposed his motion, arguing that the Court lacks jurisdiction over Copley as well.  *See* Def.'s Opp. Mem., ECF No. 31.  The Court agrees with the Defendants.

Mr. Hamann has not sufficiently alleged that jurisdiction over either Defendant or Copley is appropriate under Connecticut's long-arm statute.  Furthermore, Mr. Hamann has not alleged that Defendants had the "minimum contacts" with Connecticut that are required for this Court to establish jurisdiction under the Due Process Clause.  Defendants' motion to dismiss the Complaint is GRANTED and Mr. Hamann's motion to amend the Complaint is DENIED.

1

### I.      Factual Allegations

Mr. Hamann purchases and sells high-end motor vehicles in Connecticut.  Compl. ¶ 1.  He alleges that he was the exclusive agent for the sale of a 1953 Ferrari 375MM Pininfarina Spyder, Chassis No. 0360AM ("the Ferrari") on behalf of a Milanese seller named Vincenzo Scandurra.  *Id.* at ¶ 2; *see also* Exclusive Agency Agreement (undated), Pls.'s Surreply Brief., Ex. C, ECF No. 24-1.  The Ferarri was originally part of the collection of Emilio Gnutti in Brescia, Italy.  Compl. ¶ 9.  At some point, Vincenzo Scandurra had agreed to purchase the Ferarri from Gnutti and paid a deposit.  *Id.* at ¶ 10.  Scandurra allegedly communicated with the Plaintiff about selling the car and told Mr. Hamann that he intended to sell the Ferarri and wanted to sell it very quickly.  *Id.* at ¶ 12.

On July 21, 2013, Mr. Hamann allegedly offered to sell the Ferarri to Mr. Carpenter for a purchase price of $15 million.  *Id.* at ¶ 5.  Mr. Carpenter declined the offer on behalf of himself and Mr. Wexner.  *Id.* at ¶ 8.  Mr. Hamann allegedly informed Mr. Carpenter, "via e-mails and via conversations," that he was the exclusive sales agent for the Ferarri.  *Id.* at ¶ 6.

At some point, Mr. Hamann "secured an offer" of $10.5 million for the vehicle and Vincenzo Scandura instructed him to complete the sale.  *Id.* at ¶ 13.  Mr. Hamann arranged for his client to send a deposit of two million Euro on August, 29, 2013.  *Id.* at ¶14.  On or about August 30, 2013, Mr. Hamann learned from Mr. Scandurra that a third party, the owner of a Ferarri dealership in Milan, Italy, had offered to purchase the car from Gnutti for $12.5 million.  *Id.* at ¶ 16.  A U.S. based car dealer was allegedly involved in this transaction.  *Id.* at ¶ 17.  Plaintiff alleges that this dealer was Defendant Carpenter, acting on behalf of Defendant Wexler.  *Id.* at ¶ 18.

Immediately after learning about the new purchaser from Mr. Scandurra, Mr. Hamann sent several e-mails to Mr. Carpenter "advising him that [Mr. Hamann] had the car under contract with a deposit on the way."  *Id.* at ¶¶ 19-20.  He also contacted Mr. Carpenter's assistant at his dealership, Copley Motors.  *Id.* at ¶ 21. The assistant promised to notify Mr. Carpenter about the problem.  *Id.* at ¶ 22.  Eventually, Mr. Carpenter responded to say that he did not think that Mr. Hamann had

exclusive sales rights to the vehicle because "seven other dealers would have offered him the car

after plaintiff for the same price." *Id.* at ¶ 25.  Mr. Hamann alleges that Mr. Carpenter acted "with a

reckless indifference to [Mr. Hamann's] contractual rights."  *Id.* at ¶ 30.  He claims that he lost a

commission of €55,000 as a result of Mr. Carpenter's allegedly tortious actions.  *Id.* at ¶ 29.

Mr. Hamann alleges that "at all times relevant to the complaint and for many years before

and since, [Mr.] Carpenter has engaged in business in Connecticut."  Compl. ¶ 5.  He adds in his

response that:

1. Carpenter has purchased vehicles in Connecticut for many years, doing business with
   multiple businesses in Connecticut including but not limited to Wayne Carini, owner
   of F40 Motorsports, Portland, Connecticut, Ted Johnson, Joseph Amodio, owner of
   International Motorcars, Southington, Connecticut.

2. On the website of his company, Carpenter advertises that he can 'arrange for a lease
   for any of the classics or Defenders in our inventory. We collaborate exclusively with
   Putnam Leasing Company of Greenwich, Connecticut. …As the owner and operator
   of Copley Motorcars, … you are dealing with a small company whose principal – me
   – is involved day-to-day, … I am the sales department, the leasing department, and
   the complaint department.'

Pl.'s Reponse, ECF No. 16, at 5, citing Website, Pl.'s Response, Ex. B.  On May 20, 2016, Mr.

Hamann sought to amend his complaint to add Copley Motorcars ("Copley") as a Defendant.  *See*

Mot. to Amend, ECF No. 27.  Defendants have moved to dismiss Mr. Hamann's case, arguing that

the Court lacks jurisdiction over the original Defendants.  Mot. to Dismiss, ECF No. 10.  They have

also opposed Mr. Hamann's motion to amend, arguing that the Court lacks jurisdiction over Copley

as well.  Def.'s Opp. Mem., ECF No. 31.

## II.   Standard of Review

On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff

bears the burden of showing that the court has jurisdiction over the defendant.  *DiStefano v. Carozzi*

*N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  Prior to discovery, a plaintiff challenged by a

jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient

allegations of jurisdiction.  At that preliminary stage, the plaintiff's prima facie showing may be

established solely by allegations. *Ball v. Metallurgie Hoboken-Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990).

The Court must accept all undisputed factual allegations for the purpose of determining personal jurisdiction. *Pitruzello v. Muro*, 70 Conn. App. 309, 314-15 (2002). However, if a plaintiff's factual allegations are disputed the Court cannot "avoid scrutiny of the plaintiff's affidavit to determine whether it [can] provide a sufficient basis for the court to assume … jurisdiction." *Id.* (approving of a trial court's decision not to exercise jurisdiction over a defendant because even though plaintiff's allegations, "standing alone, might have provided a basis for assuming personal jurisdiction," they "were not supported by [the plaintiff's] affidavit and [had] been contradicted by [the defendant's] affidavit"); *see also Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) ("A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place."); *Daventree Ltd. v. Republic of Azer.,* 349 F. Supp. 2d 736, 757 (S.D.N.Y. 2004) ("The court accepts plaintiffs' allegations of jurisdictional facts and will construe all factual inferences in their favor. It need not, however, accept a legally conclusory assertion") (internal citations omitted.); *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 552 (2014) ("A plaintiff, in presenting facts sufficient to establish the court's jurisdiction, must present specific, and not simply conclusory, allegations").

## III.   Discussion

In a diversity action, the amenability of a foreign defendant to suit in federal court is determined in accordance with the law of the state where the court sits, so we apply Connecticut law to this case. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963). In Connecticut, "a trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." *Thomason v. Chem. Bank*, 234 Conn. 281, 285-86 (1995). The Court will address the question of whether it would offend due process to assert jurisdiction only after

determining that jurisdiction is statutorily permissible. *See Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.*, 190 Conn. 245, 250 (1983).

Defendants argue that Mr. Hamann has not put forth non-conclusory allegations that merit jurisdiction under either Connecticut's long-arm statute or the due process clause. Mot. to Dismiss, 4. The Court agrees.

Mr. Hamann refers to two provisions of the long-arm statute: § 52-59b(a)(3), which confers jurisdiction on a defendant who commits out-of-state tortious conduct, and § 52-59b(a)(1), which provides for jurisdiction over a defendant who "transacts any business within the state." *See* Conn. Gen. Stat. § 52-59b (2016). Jurisdiction is inappropriate under both provisions. Furthermore, Mr. Hamann has not alleged that Defendants had the "minimum contacts" with Connecticut that are required for this Court to establish jurisdiction under the due process clause.

### A.  Long Arm Statute

Plaintiff argues that jurisdiction is appropriate under § 52-59b(a)(3) of Connecticut's long arm statute, which confers jurisdiction on a defendant who, in addition to satisfying the requirements of subsections (A) and (B) of that section, "commits a tortious act outside the state causing injury to person or property within the state." Pl.'s Reply Br., ECF No. 16, 2 (citing Conn. Gen. Stat. § 52-59b(a)(3) (2016)). Defendants argue that § 52-59b(a)(3) does not confer jurisdiction because the alleged injury occurred in Italy, not in Connecticut. *See* Def.'s Reply, 3-4. The Court agrees with the Defendants.

Courts in this District use the "'critical events' test to determine the situs of the injury resulting from a commercial tort." *Halo Tech Holdings, Inc. v. Cooper*, Civ. No. 3:07-CV-489(AHN), 2008 U.S. Dist. LEXIS 24831 (D. Conn. March 27, 2008), *30 (citing *Bross Util. Serv. Corp. v. Aboubshait*, 489 F. Supp. 1366, 1374 (D. Conn. 1980) (construing § 52-59b(a)(3) in light of nearly identical provisions of New York's long-arm statute), *aff'd*, 646 F.2d 559 (2d Cir. 1980)). In the "context of commercial torts, the place of injury is generally the place where the critical events

5

associated with the dispute took place," regardless of where the business is domiciled or incorporated. *Id.*; *see also American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.* 439 F.2d 428, 433 (2d Cir. 1971) (noting that a similar component of New York' long-arm statute "is not satisfied by remote or consequential injuries which occur in [the state] only because the plaintiff is domiciled, incorporated or doing business in the state") (internal citations omitted);[1] *Evergreen Media Holdings, LLC v. Warren*, 105 F. Supp. 3d 192, 199 (D. Conn. 2015) ("[T]he situs of a commercial injury is generally where the plaintiff experiences a loss of business, not where the plaintiff resides, despite the fact that the plaintiff may, while in his home state, subsequently feel the economic impact of the lost business.").

To assert jurisdiction based on out-of-state tortious conduct that caused an economic injury, a plaintiff must show that the lost income or revenue would have been derived from in-state activities. *Greene v. Sha-Na-Na*, 637 F. Supp. 591 (D. Conn. 1986).  In *Greene*, the plaintiff, a Connectricut resident and former member of the band "Sha-Na-Na," sued his former bandmates, who were not Connecticut citizens, after they dissolved the band and formed another partnership under the same name.  *Id.* at 592.  The court found that the "critical events" associated with the dispute—the dissolution of the original band, the formation of a new partnership using the name "Sha-Na-Na," and the new partnership's subsequent performances—took place outside Connecticut.  *Id.* at 597-98.  Significantly, the "lost income" that the plaintiff was suing to recover would have been derived solely from out-of-state performances.  *Id.* ("There is no evidence in the record that, at the time of service, the defendants had performed or negotiated any contracts in Connecticut or solicited any business here resulting in a loss of income to the plaintiff.").  While the plaintiff had clearly "suffered

---

[1] Because "in enacting § 52-59b, the legislature used New York Civil Practice Law § 302 (McKinney 1980-81 Supp.) as a model," Connecticut courts "find pertinent the judicial interpretation given to that New York statute." *Zartolas*, 440 A.2d at 180-81.

some harm in Connecticut," it was "only in the sense that lost business anywhere in the United States indirectly would affect his income in Connecticut because he is domiciled here." *Id.*

Similarly, in *Halo*, the court declined jurisdiction over Defendant Fraas under§ 52-59b(a)(3), holding that Fraas's "out of state tortious conduct did not cause direct economic injury to Halo in Connecticut." *Halo*, 2008 U.S. Dist. LEXIS 24831 at *29. Fraas and her co-defendants had allegedly sent a letter from Georgia to an Illinois company advising that she would not work for the Company if it purchased a subsidiary company of plaintiff Halo. *Id.* Because of this letter, Halo alleged, the purchaser did not buy the company and Halo was economically injured. *Id.* at *12 (Halo further alleged that defendants had violated CUTPA, breached their fiduciary duties to Halo, and tortiously interfered with Halo's own fiduciary duties). The Court determined that Connecticut's long-arm statute did not confer jurisdiction over Fraas based on her alleged out-of-state tortious conduct because the "critical events" associated with the alleged conduct took place either in Illinois, where the purchaser was located, or in Georgia, from where the letter was mailed. *Id.* Although Halo was based in Connecticut, the Court found that the "situs" of its economic injury was elsewhere. *Id.* Because of this, Fraas's conduct "did not cause direct economic injury to Halo in Connecticut within the meaning of the long-arm statute." *Id.* at 30.

Here, the "critical events" that caused Mr. Hamann's injury occurred elsewhere. Mr. Carpenter arranged to purchase the Ferrari by communicating with a dealer in Italy from his office in Massachusetts. Like Fraas's letter in *Halo*, the action that allegedly interfered with Plaintiff's business was not initiated from Connecticut and did not involve the state of Connecticut. The only connection between the allegations and this forum is the fact that Mr. Hamann informed Mr. Carpenter of his exclusivity agreement from Connecticut and the fact that Mr. Hamann's himself was based here. This is insufficient.

The lost revenue that Mr. Hamann claims derived from negotiations that Mr. Carpenter made in Italy. Like the plaintiff in *Greene*, Mr. Hamann's injuries are connected to Connecticut only to the

extent that "lost business anywhere" would affect his income in Connecticut. *Greene*, 637 F. Supp. at 598. Furthermore, the fact that he communicated with Mr. Carpenter from Connecticut about the alleged exclusivity agreement does not make jurisdiction appropriate under the long-arm statute. *See Vitale v. Catanese*, No. 3:11-cv-1831 (MPS), 2013 U.S. Dist. LEXIS 108651, at *8 (D. Conn. Aug. 2, 2013) ("[C]ourts have consistently found that the transmission of communications between a non-resident defendant and a party within the jurisdiction does not, by itself, constitute the transaction of business in this state.")

Because Mr. Hamann has not demonstrated that Mr. Carpenter committed the requisite tortious act to satisfy jurisdiction under subsection 52-59b(a)(3), the Court declines to assess whether Mr. Carpenter would meet the other requirements of this section, that he "regularly do [business]," "solicit business," "engage[ ] in any other persistent course of conduct," or "derive … substantial revenue from goods used or consumed or services rendered" in Connecticut; or that he "derive … substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52-59b(a)(3)(A), (B) (2016).

Mr. Hamann suggests in his Complaint that jurisdiction over Defendants is appropriate based on Mr. Carpenter's transaction of business in the state. Compl. at ¶ 5 ("at all times relevant to the complaint and for many years before and since, [Mr.] Carpenter has engaged in business in Connecticut.") The Court disagrees. Mr. Hamann cannot establish jurisdiction over Mr. Carpenter based on his transaction of business in Connecticut because he has not alleged a cause of action that arose from Mr. Carpenter's Connecticut-based business.

Subsection (a) of §52-59b provides for personal jurisdiction "over any nonresident individual" who, in person or through an agent, "[t]ransacts any business within the state." Conn. Gen. Stat. § 52-59b (a) (2016). The term "transacts any business," is interpreted broadly and can "embrace a single business transaction." *Zartolas v. Nisenfeld*, 440 A.2d 179, 181 (Conn. 1981) ("In determining whether the plaintiffs' cause of action arose from the defendants' transaction of business

within the state we do not resort to a rigid formula.  Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors.")  While courts employ a broad definition of "transacts business," they still require an assessment of whether any of a defendants' conduct in Connecticut constituted "the transaction of any business" and the plaintiff's "causes of action … arise from those business transactions."  *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 560-61 (D. Conn. 2010); *Ryan v. Cerullo*, 282 Conn. 109, 123 (2007) (declining jurisdiction because, if the defendants had transacted business in Connecticut, the plaintiffs claim of negligent preparation of his New York tax returns "relate[d] solely to the allegedly negligent preparation of his New York income tax returns.")

Plaintiff alleges that Defendants' website, on which he advertises that he can "arrange for a lease" for Connecticut customers and that he collaborates exclusively with a Connecticut corporation, suggests that he transacts business in the state.  Even assuming that the statements on Mr. Carpenter's website constituted the transaction or solicitation of business, jurisdiction is inappropriate because Mr. Hamann's cause of action does not "arise out of" Mr. Carpenter's solicitation of Connecticut customers or exclusive collaboration agreement with a Connecticut company.  Jurisdiction is inappropriate under this section of the long arm statute.

### 3.  Due Process Clause

Defendants also argue that the exercise of jurisdiction over either defendant in this case would be inconsistent with "constitutional due process considerations."  Def.'s Mot., 9.  Plaintiff responds that Defendants "should reasonably have anticipated being sued in Connecticut," because Carpenter knew that his conduct would "have the foreseeable consequence of direct economic injury to Hamann at his place of business in Connecticut."  Pl.'s Reply, 8.  The Court agrees with the Defendants.  Even if jurisdiction were appropriate under Connecticut's long-arm statute, it would be inappropriate under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

When determining whether jurisdiction would offend due process, the Court must assess whether Defendants have "sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  To have such contacts, Defendants must "purposefully avail [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Sherman Assocs. v. Kals*, 899 F Supp. 868, 871 (D. Conn. 1995) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Where "the claim arises out of, or relates to, the defendant's contacts with the forum"—i.e., specific jurisdiction—minimum contacts exist "where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being haled into court there." *Burger King Corp.*, 471 U.S. at 472-76.  A state may assert "general jurisdiction"—i.e., jurisdiction irrespective of whether the claim arises from or relates to the defendant's forum contacts—only where these contacts are "continuous and systematic." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 152 (2d Cir. 2001).

Plaintiff argues that the Court can assume specific jurisdiction over Defendants because of Mr. Carpenter's alleged interference with a Connecticut-based Plaintiff's contractual rights.  Pl.'s Opp. Mem., 7 ("Carpenter's specific conduct gave rise to plaintiff's cause of action.").  Even a defendant's "single act," Mr. Hamann argues, can support jurisdiction when the defendant "should reasonably have anticipated being sued in Connecticut" because of the action.  *Id.*

 Mr. Hamann is correct that a single action can form the "substantial connection" with the forum state that is required for jurisdiction.  *David v. Weitzman*, 677 F. Supp. 95 (D. Conn. 1987).  In *David*, which Plaintiff cites, the court found that the defendants had purposefully availed themselves of the benefits of the state "by fraudulently misrepresenting to a person in this state that they would sell her a condominium on terms more advantageous to her than they ever intended to provide … thereby inducing her to enter into a contract to buy and to make a deposit."  *Id.* at 100.  While the

defendant had made only one communication with the Connecticut plaintiff, the court found that jurisdiction could be based on that communication because defendant had intentionally targeted a Connecticut plaintiff by a Connecticut action.  *Id.* at 99 ("[T]he number of contacts with the forum state is not, by itself, determinative … what is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state.") (quoting *Brown v. Flowers Industries, Inc*., 688 F.2d 328, 333 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983)).

A single act cannot support jurisdiction, however, when it is only connected to the state because the injured plaintiff is located there.  In *Brookridge*, the court declined to exercise jurisdiction over defendants, a Georgia company and its Georgia-based purchasing manager, who had allegedly interfered with a purchase agreement between the plaintiff and a third-party. *Brookridge Funding Corp. v. King & Prince Seafood Corp.*, No. 3:08-cv-1684 (CFD), 2009 U.S. Dist. LEXIS 52707, at *12-13 (D. Conn. June 22, 2009).  The court held that the defendants' alleged interference with the contract did not constitute "minimum contacts" with Connecticut, even though Brookridge was based in Connecticut and had communicated with the defendants from Connecticut about the contract.  *Id.*  The court emphasized that "there is no evidence here that [the defendants] directed any activity at Connecticut; [the defendants] did not purposefully avail themselves of Connecticut by responding to Brookridge-initiated requests for verification."  *Id.*  There was not even evidence, the court added, that defendants knew that the company was located in Connecticut.  *Id.* at *13; *see also Marczeski v. Kamba*, No. 3:99-02479 (AWT), 2001 U.S. Dist. LEXIS 12555 (D. Conn. Feb. 23, 2001), at *10-11 (when the plaintiff alleged that the out-of-state defendant caused a Connecticut-based third party to arrest her, jurisdiction was inappropriate because the only contacts that the defendants were alleged to have had with Connecticut were "telephone calls from or to the plaintiff, arising out of her complaints to them").

Like the plaintiff in *Brookridge*, Mr. Hamann has claimed that out-of-state defendants intentionally interfered with an agreement he made with a third party.  Mr. Hamann has alleged that he contacted Mr. Carpenter from Connecticut to tell him that he had an exclusive right to sell the Ferrari, suggesting that Mr. Carpenter knew that Mr. Hamannn was based in Connecticut.  However, even if Mr. Carpenter knew that Mr. Hamann was based in Connecticut, he did nothing else to avail himself of the forum.  Unlike the defendant in *David*, Mr. Carpenter did not commit an intentional tort in Connecticut. The intentional tort that he allegedly committed occurred in Italy.  The only connection between Mr. Carpenter and Connecticut is the fact that Mr. Hamann is based here.  Under *Brookridge*, this is not enough to establish jurisdiction under the Due Process Clause.

**4.  Defendant Wexner**

Mr. Hamann has also sued Defendant Wexner and Wexner has also moved to dismiss his Complaint.  Mr. Hamann alleges that Mr. Carpenter was acting as Mr. Wexner's agent while he committed the allegedly tortious actions.  As Mr. Hamann points out, because of the agency relationship between the two Defendants, this Court could exercise jurisdiction over Mr. Wexner if it had jurisdiction over his agent.  *See* Pl.'s Surreply, ECF No. 24, 3 ("[N]owhere does defendant challenge that Carpenter was the agent for Wexner, and thus is subject to jurisdiction because he was acting through his agent.")  Courts have held that an agent's actions, alone, cannot establish jurisdiction over an out-of-state principal.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977) (noting that courts have "held that a New York agent cannot establish jurisdiction over his out-of-state principal solely on the basis of the agent's own acts in New York."); *Chase v. Neff Kitchens Mfg., Ltd.*, No. CV020820079S, 2004 Conn. Super. LEXIS 2905, at *7 (Super. Ct. Oct. 18, 2004) (noting, while holding that jurisdiction was inappropriate over an agent under Connecticut's long-arm statute, that "the plaintiffs have not presented authority for the proposition that personal jurisdiction over an apparent agent necessarily creates personal jurisdiction over the principal").  Because jurisdiction over Mr. Carpenter is inappropriate, and

because Mr. Hamann has not alleged any jurisdictional facts specific to Mr. Wexner, the Court cannot exercise jurisdiction over either Defendant.

## IV.    Mr. Hamann's Motion to Amend

Mr. Hamann has also sought leave to amend his Complaint to add Copley as an additional defendant.  *See* Pl.'s Mot. to Amend, ECF No. 28, 1.  He alleges that Copley "was involved with the same tortious interference with Plaintiff's business expectancy and contract rights as alleged against Carpenter in the original complaint."  *Id.*  Defendants argue that the Court should deny Mr. Hamann's motion because amendment would be futile, since the Court lacks jurisdiction over Copley.  The Court agrees.

After a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15, which calls for leave "when justice so requires," has been applied liberally in order to "facilitate a proper decision on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)).  However, courts have denied "futile" requests to amend complaints.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("a futile request to re-plead should be denied").  An amendment is considered futile "if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis."  *Caro v. Fid. Brokerage Servs.*, LLC, 2013 WL 3929708, at *2 (D. Conn. July 26, 2013); *Strachan v. Schweiger*, No. 10-CV-4527 (JFB) (WDW), 2011 U.S. Dist. LEXIS 102266, at *7-8 (E.D.N.Y. Sep. 12, 2011) (denying leave to amend when the "amended Complaint does not (and cannot) create diversity jurisdiction").

Mr. Hamann does not specifically reference the basis for jurisdiction over Copley in his motion to amend, nor has he responded to Defendants' argument that he lacks jurisdiction over the proposed Defendant.  He alleges, however, that the corporation was "involved with the same tortious interference with plaintiff's business expectancy and contract rights as alleged against Carpenter in the original complaint."  Pl.'s Mot. to Amend, 1.  Mr. Hamann alleges that Copley's address is "37

13

Chestnut St, Needham, Massachusetts," *Id.* at 1, and that Copley is "owned by the defendant

Carpenter," a Massachusetts citizen. *Id.*; Compl. at ¶ 3. Accordingly, the Court assumes that Mr.

Hamann intends to base jurisdiction on § 33-929(f)(4), which provides for jurisdiction over a foreign

corporation when the claim arises from tortious conduct in Connecticut. Conn. Gen. Stat. § 33-929

(2016) (providing that a foreign corporation is subject to suit in Connecticut on any cause of action

arising "(4) out of tortious conduct in this state, whether arising out of repeated activity or single acts,

and whether arising out of misfeasance or nonfeasance."). The alleged tortious conduct is Mr.

Carpenter's interference with Mr. Hamann's purchasing of the Ferrari in Italy, in alleged violation of

Mr. Hamann's exclusivity agreement.

Section 33-929(f)(4) requires that the alleged tortious conduct be committed within

Connecticut for jurisdiction to exist. *David*, 677 F. Supp. at 97 (D. Conn. 1987) (analyzing

jurisdiction over individual and corporate defendants together). It is not enough that the

consequences of the defendants' acts impact a plaintiff in Connecticut; the tortious conduct must be

directly and expressly targeted at the forum state to support jurisdiction over a foreign corporation.

*Bross Utils.*, 489 F. Supp. at 1372-73 & n.35 (noting that Connecticut's long-arm statute subjects

non-resident individuals to jurisdiction in the state for tortious acts outside the state having effects in

the state but contains no similar provision for corporations and relying upon this omission to reject a

broad reading of the "tortious conduct in this state" provision). Although Mr. Hamann may have

experienced the consequences of Copley's actions in Connecticut, the tortious conduct he alleges

occurred in Italy, as discussed above. Mr. Hamann has not alleged that any of Copley's Connecticut-

based activities were themselves tortious.

Mr. Hamann also cannot base jurisdiction over Copley on other subsections of the long arm

statute. Mr. Hamann has not produced evidence to show that his cause of action arose from business

that Copley "transacted" or "solicited" in the state. Furthermore, because Mr. Hamann bases his

attempt to assert jurisdiction over Copley on the same allegations that formed the basis of his claims

against the individual Defendants, the Court notes that he has not put forth sufficient allegations to satisfy the Due Process Clause's requirements for jurisdiction, either.

Accordingly, Mr. Hamann has not alleged sufficient facts to justify the Court's jurisdiction over either Defendant or over Copley.  For this reason, Defendant's Motion to Dismiss is GRANTED and Plaintiff's Motion to amend the Complaint is DENIED.

The Clerk of the Court is directed to close this case.

SO ORDERED at Bridgeport, Connecticut this 31st day of January, 2017.

/s/ Victor Bolden_____

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE